**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JUAN CARLOS LEDESMA,

        Petitioner,

vs.

JERRY BURT,

        Respondent.

No. 04-CV-4121-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *A.*     *Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *B.*     *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *C.*     *State Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *D.*     *Federal Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . . . . **8**

III.   **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

IV.   **STANDARDS OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
    *A.*     *Requirements under 28 U.S.C. § 2254(d)* . . . . . . . . . . . . . . . . . . **11**
    *B.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . **14**
    *C.*     *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . **17**

V.     **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
    *A.*     *Ineffective Assistance of Trial Counsel—Conflict of Interest* . . . . . **20**
        *1.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . **20**
        *2.*     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
    *B.*     *Ineffective Assistance of Trial Counsel—Vienna Convention* . . . . . **24**
        *1.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . **25**
        *2.*     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
    *C.*     *Due Process Violation—Prejudicial Demonstrative Evidence* . . . . . **30**

|   | 1. | Exhaustion/Procedural Default | . . . . . . . . . . . . . . . . . . . . | *30* |
|---|---|---|---|---|
|   | 2. | Merits | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *32* |
| **D.** | | **Ineffective Assistance of Trial Counsel—Inadequate Investigation** | . . | *33* |
|   | 1. | Exhaustion/Procedural Default | . . . . . . . . . . . . . . . . . . . . | *34* |
|   | 2. | Merits | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *34* |
| **E.** | | **Ineffective Assistance of Trial Counsel—Inadequate Interpreter** | . . . | *36* |
|   | 1. | Exhaustion/Procedural Default | . . . . . . . . . . . . . . . . . . . . | *36* |
|   | 2. | Merits | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *37* |

| **VI.** | **REQUEST FOR AN EVIDENTIARY HEARING** | . . . . . . . . . . . . . . . . . | *38* |
|---|---|---|
| **VII.** | **CERTIFICATE OF APPEALABILITY** | . . . . . . . . . . . . . . . . . . . . . . . | *39* |
| **VIII.** | **CONCLUSION** | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *40* |

## *I. INTRODUCTION*

On December 23, 2005, Petitioner Juan Carlos Ledesma ("Petitioner") submitted an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Application") (docket no. 1). In his Application, Petitioner challenges the legality of his conviction for first-degree murder, child endangerment, neglect of a dependent person, assault while participating in a felony and willful injury. This matter is before the court on Petitioner's Brief (docket no. 19), Respondent's Responsive Brief (docket no. 24), Petitioner's Reply Brief (docket no. 29); and Respondent's Notice of Dispositive U.S. Supreme Court Authority on Vienna Convention Issue (docket no. 32).

## *II. PROCEDURAL BACKGROUND*

### *A. Trial*

On February 10, 1997, in the Iowa District Court for Woodbury County ("Iowa District Court"), Petitioner was charged with: murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2; child endangerment, in violation of Iowa Code section 726.6; neglect of a dependent person, in violation of Iowa Code section 726.3; assault while participating in a felony, in violation of Iowa Code sections 708.1 and 708.3;

and willful injury, in violation of Iowa Code section 708.4. *See State v. Ledesma*, No. 03971, FECR046925 (Woodbury County Dist. Ct. 1997).[1]  With respect to pre-trial matters, trial matters, post-trial matters and sentencing matters, attorney Michael K. Williams and attorney Gregory E. Jones represented Petitioner.  On July 29, 1997, trial commenced.  On August 8, 1997, the trial concluded and a unanimous jury returned guilty verdicts on all of the counts.   On August 27, 1997, the Iowa District Court sentenced Petitioner to life in prison on the murder in the first degree count and ten years for each of the remaining counts.  The Iowa District Court ordered the sentences to be served concurrently.

## B.  Direct Appeal

On September 16, 1997, Petitioner filed a notice of appeal.  Attorney J. William Gallup represented Petitioner on appeal.  In his appellate brief, Petitioner argued that trial counsel provided ineffective assistance because they failed to recognize a conflict of interest and neither eliminated the conflict of interest nor withdrew as counsel.  On February 9, 2000, the Iowa Court of Appeals affirmed the Petitioner's convictions.  *See State v. Ledesma*, No. 97-1646, 2000 WL 142095 (Iowa Ct. App. 2000).  Petitioner did not file an application for further review with the Iowa Supreme Court.  On March 22, 2000, procedendo issued.

## C.  State Post-Conviction Relief

On December 19, 2000, Petitioner filed an application for post-conviction relief pursuant to Iowa Code chapter 822.  *See Ledesma v. State*, No. PCCV121510 (Woodbury County Dist. Ct. 2003).  In his application for post-conviction relief, Petitioner claimed that appellate counsel provided ineffective assistance when he failed to raise any claims

---

[1] Iowa state court criminal and civil records may be accessed at the following address:  http://www.judicial.state.ia.us/Online_Court_Services/.  *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

other than the conflict of interest claim and preserve the conflict of interest claim by asking the Iowa Supreme Court to exercise discretionary review. Petitioner also claimed that trial counsel provided ineffective assistance when they: (1) failed to object to the admission of prejudicial demonstrative evidence; (2) failed to adequately investigate the case, that is, interview witnesses and present those witnesses as part of the defense; (3) failed to object to the interpreter used at trial; and (4) failed to object to the jury selection process. With respect to those four claims, Petitioner contends that appellate counsel should have raised them in addition to the claim that trial counsel denied him effective assistance due to a conflict of interest. Further, Petitioner claimed that newly discovered evidence warranted a new trial.[2]

The Iowa District Court appointed attorney Martha M. McMinn to represent Petitioner. After filing his initial application for post-conviction relief, Petitioner submitted a brief to his attorney. Such brief again raised the claim that trial counsel failed to adequately investigate and a claim that raised the issue of his right to consular access under Article 36 of the Vienna Convention. Counsel did not submit the latter claim to the Iowa District Court.

On October 28, 2002, the State filed a motion for summary judgment.[3] On November 21, 2002, Petitioner filed a resistance, which abandoned all of the claims except the claim that trial counsel failed to adequately investigate and the claim that newly

---

[2] In support of a new trial, Petitioner attached affidavits and statements by Miguel Camberos Arteaga, Rosa Flores, Otto Mendez, Juan Escobar, Bertha Espinoza, Maria Rosa Cazares and Alejandra Guevara.

[3] In support of its motion for summary judgment, the State attached several affidavits, including but not limited to the affidavits of attorney Gregory E. Jones, attorney Michael K. Williams, attorney J. William Gallup and assistant Woodbury County attorney Jill R. Pitsenbarger.

discovered evidence or evidence not presented at trial warranted a new trial.[4] On January 27, 2003, the Iowa District Court held a hearing on the application for post-conviction relief. On March 31, 2003, the Iowa District Court granted the State's motion for summary judgment. Before granting summary judgment, the Iowa District Court concluded: (1) that trial counsel acted competently when investigating the case and made strategic decisions not to present certain evidence, that is, their performance fell within the range of reasonable professional assistance; and (2) that Petitioner failed to show that trial counsel's tactics or strategies prejudiced him. Regarding Petitioner's newly discovered evidence claim, the Iowa District Court concluded that the statements suggesting that the victim had been injured prior to the date she was taken to the hospital and that the mother of the victim went out drinking and dancing prior to and after the victim's death were: (1) testified to at trial; (2) discoverable prior to trial if Petitioner had used due diligence; (3) immaterial; and/or (4) unlikely to change the outcome of the trial.

On April 11, 2003, Petitioner filed a notice of appeal. Attorney Patrick T. Parry represented Petitioner on appeal. On July 9, 2003, counsel wrote to Petitioner and informed him that he could not find any nonfrivolous issues to present on appeal. He also directed Petitioner to raise within 30 days any issue that he wanted to further pursue. On July 11, 2003, counsel filed a motion to withdraw and a supporting brief. In the brief, counsel discussed the history of the case and stated that Petitioner could not establish the requisite prejudice to succeed on any of his ineffective assistance of counsel claims and the new evidence relied on by Petitioner would not change the result if a new trial was granted. On July 31, 2003, Petitioner filed a pro se response. In such response, Petitioner pursued the claim that trial counsel failed to adequately investigate and the claim that newly discovered evidence or evidence not presented at trial warranted a new trial. To support such claims, Petitioner, among other things, stated:

---

[4] With respect to the latter claim, counsel relied on the affidavits of Miguel Camberos Arteaga, Bertha Espinoza, Maria Rosa Cazares and Alejandra Guevara.

5

The prosecution in this case, as well as trial counsel [. . .,] had no concept as to the culture of [several witnesses], and, as a result, the investigation was shoddy and substandard. In [the brief to post-conviction counsel, Petitioner] raised the argument [concerning the] right to consular functions relating to nationals of the sending state. Article 36 of the Vienna Convention is the provision, which specifically [addresses] communication with the foreign national. It provides, in pertinent part:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending state:
>
> > (b) [i]f he so requests, the competent authorities of the receiving State shall, [without delay], inform the consular post of the sending State if, within [i]ts consular district, a national of that State is arrested or committed to [p]rison or [to] custody pending trial or is detained in any matter. Any [c]ommunication addressed to the consular post by the person arrested, [i]n [prison], custody or detention shall also be forwarded by the said [a]uthorities without delay. The said authorities shall inform the person concern[ed] without delay of [his] rights under this [sub-]paragraph.

Vienna Convention on Consular Relations[, art. 36(b)(1), Apr. 24, 1963, 21 U.S.T. 77, 100-101, T.I.A.S. No. 6820].

It was the lack of an interpreter who could speak and understand the various different dialects of Spanish that became prejudicial to [Petitioner], as the full scope of the investigation process was not realized. It was also the lack of the assistance from individuals from the Mexican consulate to help in the diversity of cultures in assisting in the investigation which was prejudicial to [Petitioner].

On March 24, 2004, the Iowa Supreme Court granted leave for counsel to withdraw and, relying on Iowa Rules of Appellate Procedure 6.33 and 6.104, dismissed as frivolous Petitioner's appeal. On April 7, 2004, procedendo issued.

On April 9, 2004, Petitioner, proceeding pro se, filed a motion for further review. In such motion, Petitioner asserted claims presented in his application for post-conviction relief, including claims that Petitioner waived in his resistance to the State's motion for summary judgment. Specifically, he argued (1) trial counsel failed to adequately investigate the case, that is, interview witnesses and present those witnesses as part of the defense; (2) trial counsel failed to object to the interpreter used at trial; (3) trial counsel failed to object to the jury selection process; and (4) newly discovered evidence or evidence not presented at trial warranted a new trial. Additionally, Petitioner made a statement regarding Article 36 of the Vienna Convention.[5] Petitioner also alleged several new claims not raised at any previous state court proceeding, including a claim that trial counsel failed to properly explain the consequences or benefits of a plea agreement, a claim that counsel failed to adequately question the mother of the victim regarding her prior abuse of the victim and a claim that the evidence only supported a conviction for neglect of a dependent person, not murder in the first degree. On April 26, 2004, the State filed a resistance. On November 24, 2004, the Iowa Supreme Court construed Petitioner's motion for further review as a motion for reconsideration of the decision to dismiss as frivolous Petitioner's appeal, and the Iowa Supreme Court denied it. On December 6, 2004, procedendo issued. Such procedendo noted that there was an appeal from the district court judgment to the Iowa Supreme Court and stated that, on November 24, 2004, the Iowa Supreme Court confirmed as its order the one that entered on March 24, 2004.

---

[5] Petitioner stated:

> Under Article 36 of the Vienna Convention[, Petitioner] was entitled to foreign National [sic] to assist in providing an interpreter to properly translate for [Petitioner. Petitioner] is further entitled to all other provisions and benefits under the Vienna Convention.

## D. Federal Post-Conviction Relief

On December 23, 2004, Petitioner filed his Application in this court. In his Application, Petitioner asserts multiple grounds as a basis for relief under 28 U.S.C. § 2254. Those grounds are as follows: (1) Petitioner's convictions were obtained by a jury that was unconstitutionally selected and impaneled; (2) Petitioner's counsel provided ineffective assistance; (3) Petitioner's convictions were obtained in violation of his right against self-incrimination and through prosecutorial misconduct; and (4) Petitioner's convictions are not supported by the evidence. Concerning the ineffective assistance of counsel ground, Petitioner, among other things, asserted: (1) trial counsel failed to recognize a conflict of interest and neither eliminated the conflict of interest nor withdrew as counsel; (2) trial counsel failed to adequately investigate the case, that is, interview witnesses and present those witnesses as part of the defense; (3) trial counsel failed to make clear that Karen had prior injuries; (4) trial counsel failed to object to the admission of prejudicial demonstrative evidence; (5) trial counsel failed to correctly advise him concerning the admission that he pushed Karen and the consequences of entering into a plea agreement; (6) trial counsel failed to object to the interpreter used at trial; and (7) trial counsel failed to object to erroneous jury instructions. Under the same ground, Petitioner made a statement regarding Article 36 of the Vienna Convention.[6]

On February 28, 2005, Respondent filed an Answer. On November 11, 2005, Petitioner filed a Brief on the merits. In his Brief, Petitioner waives some of his claims and argues: (1) trial counsel provided ineffective assistance because they failed to

---

[6] With respect to the Vienna Convention, Petitioner essentially stated that same thing that he stated in his motion for reconsideration. Namely, Petitioner stated:

> Under Article 36 of the Vienna Convention[, Petitioner] was entitled to Foreign National assistance in providing an interpreter to properly translate for [Petitioner. Petitioner] is further entitled to all other provisions and benefits under the Vienna Convention.

recognize a conflict of interest; (2) trial counsel provided ineffective assistance when they failed to inform him of his rights under Article 36 of the Vienna Convention; (3) a due process violation occurred when the Iowa District Court overruled defense counsel's objection regarding prejudicial demonstrative evidence; (4) trial counsel provided ineffective assistance because they failed to adequately investigate; and (5) trial counsel provided ineffective assistance when they failed to procure an adequate interpreter. Petitioner also asserts that his claims are not procedurally defaulted, and he requests an evidentiary hearing.

On January 13, 2006, Respondent filed a Responsive Brief. In his Responsive Brief, Respondent argues that Petitioner's claims are procedurally defaulted and/or do not merit relief under 28 U.S.C. § 2254. Respondent also resists Petitioner's request for an evidentiary hearing under 28 U.S.C. § 2254(e).

On February 15, 2006, Petitioner submitted a Reply Brief. In his Reply Brief, Petitioner pursues all of his claims except the claim that counsel provided ineffective assistance when they failed to procure an adequate interpreter. He also reasserts that the claims are not procedurally defaulted and that he is entitled to relief. Petitioner also insists that the court conduct an evidentiary hearing.

On July 7, 2006, Respondent filed a Notice of Dispositive U.S. Supreme Court Authority on Vienna Convention Issue. With regard to such document, Respondent cites to *Sanchez-Llamas v. Oregon*, ___ U.S. ___, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006).

Having concluded that the case is fully submitted and ready for decision, the court now turns to consider it.

## III. *FACTUAL BACKGROUND*[7]

On direct appeal, the Iowa Court of Appeals summarized the facts. *See Ledesma*, 2000 WL 142095, at *1. With respect to Petitioner's application for post-conviction relief, the Iowa District Court also summarized the facts before ruling on the State's motion for summary judgment. *See Ledesma v. State*, No. PCCV121510 (Woodbury County Dist. Ct. 2003). Based on a synthesis of those summaries, the facts are as follows:

> In January of 1997, Petitioner was living with his girlfriend, Mirta, and her daughter, Karen, who was born on May 19, 1995. Petitioner was not Karen's father. On the morning of January 28, 1997, Mirta left with a neighbor to go job hunting. When she left the apartment, Petitioner was sleeping in bed and Karen was sleeping in her crib. When Mirta returned a few hours later, Karen was lying in the crib with blood and vomit around her mouth, and she was having a seizure. Petitioner was in bed. Mirta grabbed Karen and ran to the neighbor's house to get a ride to the hospital. Karen suffered a large skull fracture and several other injuries to different parts of her body. Karen died as a result of her injuries.
>
> Petitioner was arrested and charged with murder in the first degree, child endangerment, neglect of a dependent person, assault while participating in a felony and willful injury. At the time of his arrest, Petitioner denied any knowledge of Karen's injuries. He admitted that no one else had entered the apartment.
>
> While in prison, Petitioner wrote letters to Mirta. He stated that the injuries to Karen were an accident and that the baby fell from his hands and hit her head. He also stated:
>
>> I told the attorney the truth and he told me that I shouldn't tell anyone and that is why I hadn't done it But I owe you the truth because you deserve it more than anything I gave the attorney a letter with my whole confession for you he said that after everything was over . . . was going to give it to you because in it I tell you everything exactly how it happened I would like

---

[7] The facts and evidence are summarized in the light most favorable to the verdict. *See Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *Copeland v. Washington*, 232 F.3d 969, 971 (8th Cir. 2000); *Mallet v. Bowersox*, 160 F.3d 456, 458 (8th Cir. 1998). When relevant, additional facts are discussed in the court's analysis.

to tell you everything in person so you can see that you shouldn't judge person before you know the truth . . . I hope that one day the attorney will give you my confession or that I one day will tell you everything on my knees and ask you for forgiveness for being such a coward and not having told you the whole truth . . .

These letters were admitted into evidence with no objection by the defense.

During the trial, Petitioner testified that Karen's injuries were an accident. He testified that Karen woke up three times while Mirta was gone. Each time he told her to go back to sleep. The fourth time Karen woke up, Petitioner became angry because she was making noise. He pushed her down in the crib, causing her to fall against the side and cry. Petitioner picked her up out of the crib and put her on the bed. He testified that while he was getting a tissue for Karen to wipe her nose, she slipped off of the bed and hit her head on a chair.

The medical evidence, however, showed a great deal of force had been used to cause Karen's injuries. There was no medical evidence that Karen had any prior injuries to any part of her body.

## IV. STANDARDS OF REVIEW

### A. Requirements under 28 U.S.C. § 2254(d)

Title 28, United States Code, section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of

legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. *See id.* at 1029-30.

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners. *See Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of *Williams*); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); *see also Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under *Williams*, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state

prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established federal law.'" *Id.* at 407-08. Notably, however,

[u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Id.* at 411 (emphasis added).

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Petitioner's claims. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); *Newman*, 247 F.3d at 850-52 (same); *Weaver v. Bowersox*, 241 F.3d 1024, 1029-30 (8th Cir. 2001) (same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (same).

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor

of state court findings of fact."[8]  *Weaver*, 241 F.3d at 1030.  Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Petitioner rebuts that presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings . . .").  "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'"  *Weaver*, 241 F.3d at 1030.

Petitioner seeks relief under the 28 U.S.C. § 2254(d)(1).  He contends that the Iowa courts' decisions regarding each of his five claims were contrary to, or involved an unreasonable application of, clearly established federal law.

### B.  Exhaustion/Procedural Default

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum.  28 U.S.C. § 2254(b)(1).[9]  A petitioner has exhausted his or her state remedies when he or

---

[8] Title 28, United States Code, section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

[9] Title 28, United States Code, section 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B) (i) there is an absence of available State corrective process; or

(continued...)

she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991); *see also* 28 U.S.C. § 2254(c).[10]  In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appellate argument. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (concluding that the exhaustion doctrine requires a petitioner to seek discretionary review when that review is part of the ordinary appellate review procedure) (abrogating *Dolny v. Erickson*, 32 F.3d 381 (8th Cir. 1994)); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004) (reiterating that a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim").

The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

---

(...continued)

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

[10] Title 28, United States Code, section 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

*Ashker*, 5 F.3d at 1179 (quotations and citations omitted); *accord Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings. *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

"The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1987); *see also Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (same). A "petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of the opportunity to address those claims in the first instance." *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

The failure to exhaust a claim in state court sometimes implicates the independent and adequate state ground doctrine. *See Gray v. Netherland*, 518 U.S. 152, 161, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); *Coleman*, 501 U.S. at 732. Specifically, the Supreme Court explained:

28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the [petitioner] has exhausted the

> remedies available in the courts of the State." Because "this requirement . . . refers only to remedies available at the time of the federal [application for a writ of habeas corpus]," *Engle v. Isaac*, 456 U.S. 107, 126, n.28, [102 S. Ct. 1558, 71 L. Ed. 2d 783] (1982), it is satisfied "if it is clear that [the petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351, [109 S. Ct. 1056, 103 L. Ed. 2d 380] (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence[ and, thus,] prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane*, [489 U.S. 288, 298, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)]; *Isaac*, [456 U.S.] at 126, n.28, 129; *Wainwright v. Sykes*, 433 U.S. 72, 90-91, [97 S. Ct. 2497, 53 L. Ed. 2d 594] (1977).

*Gray*, 518 U.S. at 161-62. Apart from showing good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation, a petitioner may have a procedurally defaulted claim reviewed if he or she can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002); *Hatcher v. Hopkins*, 256 F.3d 761, 763 (8th Cir. 2001); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir. 1989).

## C. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Douglas v. California*, 372 U.S. 353, 356-57, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687; *see also Williams*, 529 U.S. at 390 (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that broad latitude to make strategic and tactical

choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

## V. DISCUSSION

As previously stated, Petitioner asserts five claims: (1) trial counsel provided ineffective assistance because they failed to recognize a conflict of interest; (2) trial counsel provided ineffective assistance when they failed to inform him of his rights under Article 36 of the Vienna Convention; (3) a due process violation occurred when the Iowa District Court overruled defense counsel's objection regarding prejudicial demonstrative evidence; (4) trial counsel provided ineffective assistance because they failed to adequately investigate; and (5) trial counsel provided ineffective assistance when they failed to procure an adequate interpreter. None of Petitioner's claims were fully exhausted on direct appeal and four of the claims do not mirror the claims that the Iowa Supreme Court addressed when Petitioner appealed the Iowa District Court's decision regarding summary judgment

in favor of the State. Moreover, all of the claims asserted by Petitioner are without merit.[11]

### A.  *Ineffective Assistance of Trial Counsel—Conflict of Interest*

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated because trial counsel failed to recognize a conflict of interest that developed as a result of letters that he wrote to Mirta or Karen's mother. Receiving no objection, the Iowa District Court admitted into evidence the letters, which state that Karen suffered injuries because she accidently fell from his hands and hit her head, acknowledge that he confessed or told the truth to his attorney and indicate that his attorney told him not to tell anyone. Given the content of the letters, Petitioner alleges that they could have been viewed from the perspective that trial counsel were acting as actual or potential witnesses, as well as advocates, thereby creating a conflict of interest. Petitioner believes that the letters challenged trial counsel's veracity, and, consequently, trial counsel should have either withdrawn or prevented the admission of the letters. Further, Petitioner argues that the Iowa District Court should have conducted a mandatory inquiry because a conflict of interest obviously existed. In response, Respondent asserts that Petitioner failed to exhaust his claim because he did not appeal it to the highest state court. Alternatively, Respondent argues that Petitioner fails to show an actual conflict of interest or prejudice as a result of trial counsel's actions, and, consequently, Petitioner fails to show that a violation of the Sixth Amendment occurred.

### 1.  *Exhaustion/Procedural Default*

Petitioner is unable to proceed on his conflict of interest claim because he did not exhaust his state court remedies, that is, he failed to give the Iowa courts an adequate opportunity to pass on the merits of his claim. Petitioner clearly admits that counsel failed

---

[11] Despite Petitioner's failure to exhaust the remedies that are available in the courts of Iowa, the court may address the merits of Petitioner's claims. *See* 28 U.S.C. § 2254(b)(2).

to seek discretionary review of the conflict of interest claim on direct appeal. *See O'Sullivan*, 526 U.S. at 845-48 (stating that discretionary review from the highest state court is required). Indeed, Petitioner asserted in his Application that appellate counsel provided ineffective assistance when he failed to preserve the conflict of interest claim by asking the Iowa Supreme Court to exercise discretionary review. Petitioner, however, only contested the State's motion for summary judgment with regard to the claim that trial counsel failed to adequately investigate and the claim that newly discovered evidence or evidence not presented at trial warranted a new trial. Given the decision to abandon the other claims, it is clear that the Iowa District Court never had a full and fair opportunity to rule on the conflict of interest claim that Petitioner asserted in his application for post-conviction relief.

Moreover, after the Iowa District Court granted summary judgment in favor of the State, Petitioner failed to raise the conflict of interest claim in any subsequent filing, including the motion to withdraw and supporting brief, the pro se response and the motion for reconsideration. To the extent Petitioner argues that he tried to resurrect the conflict of interest claim by making a general statement regarding counsel's representation on direct appeal,[12] the court concludes that such statement does not satisfy the requirement that the highest state court be presented with the same factual ground and legal theory that is asserted in the instant Application.

In light of the court's conclusion that Petitioner failed to properly exhaust his remedies in the Iowa courts, it is necessary to consider whether Iowa law prevents

---

[12] In his motion for reconsideration, Petitioner stated:

> On direct appeal, counsel failed to raise issues that were pertinent to [Petitioner's] constitutional rights and challenge [the] conviction[, which caused Petitioner to be unable] to raise these issues in a post-conviction action.

Petitioner from raising his conflict of interest claim in state court. *See Wemark v. Iowa*, 322 F.3d 1018, 1022 (8th Cir. 2003).

> Iowa law requires post-conviction applicants to raise all available grounds for relief in their original, supplemental, or amended applications. Iowa Code § 822.8 (1994). "Any ground . . . not raised . . . may not be the basis for a subsequent application" unless the court finds "sufficient reason" to justify omission. *Id.*

*Id.* In addition, a three-year statute of limitation applies to individuals who seek to file an application for post-conviction relief. *Id.* at 1022 n.3 (citing Iowa Code § 822.3 (1994)). Nowhere does Petitioner suggest that he is able to pursue his conflict of interest claim in state court and Iowa law clearly prevents him from asserting it. Consequently, Petitioner's conflict of interest claim is procedurally defaulted.

Because of the procedural default, Petitioner is barred from asserting the conflict of interest claim unless he can either show good cause for his failure to present it in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that the failure to review it would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Although a petitioner must ordinarily establish that some external impediment prevented counsel from constructing or raising a claim, the ineffective assistance of appellate counsel might qualify as cause for procedurally defaulting a claim. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Nonetheless, a petitioner who argues that the ineffective assistance of appellate counsel constitutes cause for the procedural default must first raise the issue as an independent claim. *Murray*, 477 U.S. at 488-89 (holding that "that the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *see also Bailey v. Mapes*, 358 F.3d 1002, 1004 (8th Cir. 2004) ("Although constitutionally ineffective assistance can serve as a 'cause' excusing procedural default, the ineffective assistance claim must be raised in the state [post-conviction] proceedings before it can be

relied upon in a federal habeas proceeding."). Here, Petitioner waived the claim that appellate counsel provided ineffective assistance when he failed to properly preserve the conflict of interest claim. And, Petitioner cannot claim that counsel provided ineffective assistance during post-conviction proceedings. *See* 28 U.S.C. § 2254(i); *see also Coleman*, 501 U.S. at 752 (stating that "[t]here is no constitutional right to an attorney in state post-conviction proceedings" and a petitioner "must bear the risk of attorney error that results in a procedural default"). Accordingly, Petitioner cannot rely on the ineffectiveness of his appellate counsel as cause for failing to exhaust the conflict of interest claim.

With respect to the second ground for excusing the procedural default, the court finds that Petitioner failed to show by clear and convincing evidence that he is actually innocent of the crime charged or establish a colorable claim of factual innocence. *See Keithley*, 43 F.3d at 1218; *see also Wemark*, 322 F.3d at 1022-23 (applying *Coleman*, 501 U.S. at 750). Accordingly, the court is unable to review the merits of Petitioner's conflict of interest claim based on the fundamental miscarriage of justice exception.

### 2.    Merits

Alternatively, regarding the conflict of interest claim, the court finds that relief under 28 U.S.C. § 2254(d)(1) is not warranted. The Iowa Court of Appeals correctly applied *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), when it concluded that trial counsel did not labor under an actual conflict of interest that adversely affected their performance. *Cf. Covey v. United States*, 377 F.3d 903, 907-09 (8th Cir. 2004) (assuming that a conflict existed and concluding that the conflict did not adversely affect the attorney's performance). Further, Petitioner has neither overcome the strong presumption that the conduct of counsel fell within a wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 689, nor shown that any deficiencies in counsel's performance prejudiced his defense, *id*. at 692-94. Nothing suggests that a reasonable attorney would have been able to block the admission of the letters or that

blocking their admission was even desirable. In fact, as pointed out by the Iowa Court of Appeals, the letter did not conflict with Petitioner's testimony at trial. Rather, it corroborated Petitioner's assertions that he did not mean to harm the victim and that he felt great remorse. Based on the record, counsel's conduct did not fall "outside the range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. With respect to prejudice, Petitioner's failure to state what counsel would have or even could have testified about makes it impossible to conclude that "the fact finder would have had a reasonable doubt respecting guilt." *Strickland* 466 U.S. at 695. In addition, Petitioner's admission that he pushed the victim and the medical evidence, which showed that extreme force caused the victim's injuries, strongly indicate that the jury would have reached the same decision had trial counsel blocked the admission of the letter or withdrawn and testified. *See id*. Thus, under either the *Cuyler* standard or *Strickland* standard, Petitioner's conflict of interest claim fails.

### B.  *Ineffective Assistance of Trial Counsel—Vienna Convention*

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated because trial counsel failed to inform him of his rights under Article 36 of the Vienna Convention, which addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign country. *See* Vienna Convention on Consular Relations, art. 36(b)(1), Apr. 24, 1963, 21 U.S.T. 77, 100-101, T.I.A.S. No. 6820. As a result of trial counsel's failure to inform him of his right to consular access, Petitioner asserts that he suffered prejudice. Specifically, Petitioner states that he did not receive due process or effective assistance of counsel during the trial and the direct appeal process because he had extreme difficulty understanding the legal process and communicating with law enforcement officers and his attorneys. Petitioner believes that the assistance of consular officers would have eliminated the problems he experienced and would have aided him during trial, direct appeal and post-conviction proceedings. In response, Respondent argues that Petitioner defaulted the claim

by failing to properly present it to the state courts. Alternatively, Respondent argues that Petitioner failed to show that trial counsel's actions prejudiced him.

### 1. Exhaustion/Procedural Default

By claiming in his application for post-conviction relief that appellate counsel provided ineffective assistance when he failed to raise any claims other than the conflict of interest claim, Petitioner essentially concedes that he did not present the Vienna Convention claim on direct appeal. Although Petitioner contends that he made counsel aware of the issue concerning his right to consular access under Article 36 of the Vienna Convention, Petitioner never mentioned Article 36 of the Vienna Convention in his original application for post conviction relief and he did not file a supplemental or amended application. Consequently, when it ruled on the State's motion for summary judgment, the Iowa District Court never considered Article 36 of the Vienna Convention as a basis for granting post-conviction relief.[13] Petitioner raised the Vienna Convention issue for the first time in his pro se response to counsel's motion to withdraw and supporting brief. Nonetheless, Petitioner did not raise a separate ineffective assistance claim based on the Vienna Convention, that is, he never alleged that trial counsel failed to inform him of his rights under Article 36 of the Vienna Convention. Rather, Petitioner cited the Vienna Convention to support the claim that trial counsel failed to adequately investigate his case. Aside from the pro se response, Petitioner briefly referenced Article 36 of the Vienna Convention in his motion for reconsideration and his Application. Specifically, Petitioner asserted that he was entitled to an interpreter and all other provisions and benefits under the Vienna Convention. Nowhere in the pro se response, the motion for reconsideration or the Application does Petitioner state or imply that trial counsel provided ineffective assistance when they failed to inform him of his rights under Article 36 of the Vienna

---

[13] In his Application, Petitioner admits that counsel did not raise the issue concerning his rights under Article 36 of the Vienna Convention and that the Iowa courts did not rule on it.

Convention. Nearly a year after he submitted his Application, Petitioner, in his Brief, raised the claim that trial counsel failed to inform him of his rights under Article 36 of the Vienna Convention.[14] The court is unable to grant relief based on a claim that Petitioner failed to allege in the Application. *See Frey v. Schuetzle*, 78 F.3d 359, 360-61 (8th Cir. 1996).[15]

Further, "[p]resenting a claim that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996). The claims asserted in the pro se response, the motion for reconsideration or the Application and the Brief are legally and factually different. To prove the ineffective assistance claim asserted in the pro se response, it would have to be established that trial counsel conducted a deficient investigation and deficiencies in trial counsel's performance prejudiced Petitioner's defense. *See Strickland*, 466 U.S. at 689-95. To prove the claim asserted in the motion for reconsideration or the Application, it would have to be shown that Article 36 of the Vienna Convention establishes rights that may be invoked in a judicial proceeding, that a violation of a recognizable right occurred and that the requested relief is available or appropriate because the violation prejudiced Petitioner. *See generally, Sanchez-Llamas*, ___ U.S. at ___, 126 S. Ct. at 2677-82;

---

[14] The court notes that the applicable statute of limitation most likely bars the Vienna Convention claim. *See* 28 U.S.C. § 2244(d) (providing one year to file claims); *Mckay v. Purkett*, 255 F.3d 660, 661 (8th Cir. 2001) (concluding that the petitioner's amended claims are untimely because they do not relate back to his original claims); *see also Helmig v. Kemna*, 461 F.3d 960, 962 n.1 (8th Cir. 2006) (declining to address statute of limitation argument and resolving case on the merits); *Davis v. Norris*, 423 F.3d 868, 878-79 (8th Cir. 2006) (addressing request to present additional claim in light of 28 U.S.C. § 2244).

[15] Despite the requirement that applications for a writ of habeas corpus be liberally construed, *see Frey*, 78 F.3d at 361, it is difficult to conclude that Petitioner meant to raise an ineffective assistance of counsel claim based on failure to comply with provisions of the Vienna Convention, especially considering that Petitioner clearly and concisely raised ineffective assistance of counsel claims in prior proceedings.

*United States v. Ortiz*, 315 F.3d 873, 885-87 (8th Cir. 2002); *United States v. Santos*, 235 F.3d 1105, 1107-08 (8th Cir. 2000). To prove the ineffective assistance claim asserted in the Brief, it would have to be established that trial counsel's failure to inform Petitioner of his rights under Article 36 of the Vienna Convention fell outside the range of professionally competent assistance and that trial counsel's deficient performance prejudiced Petitioner. *See Strickland*, 466 U.S. at 689-95. Because the pro se response cited Article 36 of the Vienna Convention to support the claim that trial counsel failed to adequately investigate his case and the motion for reconsideration asserted that Petitioner was entitled to an interpreter and all other provisions and benefits under the Vienna Convention, it cannot be said that Petitioner presented the highest state court with the same factual ground and legal theory that is asserted in the instant Application. Thus, Petitioner did not comply with 28 U.S.C. § 2254(b)(1) when he failed to provide the state courts with an adequate opportunity to pass on the merits of his claim that trial counsel provided ineffective assistance when they failed to inform him of his rights under Article 36 of the Vienna Convention.

Apart from failing to exhaust his remedies in the Iowa courts, Petitioner fails to argue that he is able to pursue his Vienna Convention claim in state court, and, as previously determined, Iowa law clearly prevents him from asserting it. Consequently, Petitioner's Vienna Convention claim is procedurally defaulted. Further, the court is unable to review such procedurally barred claim because Petitioner: (1) failed to demonstrate good cause for his failure to present it in state court and actual prejudice as a result of the alleged constitutional violation; and (2) failed to demonstrate that the failure to review it would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750.

### 2. *Merits*

Alternatively, the court finds that Article 36 of the Vienna Convention is an insufficient basis to grant relief under 28 U.S.C. § 2254(d)(1). Article 36 of the Vienna

Convention provides, in effect, that, when a national of one country is detained by authorities of another, the authorities must notify the consular offices of the detainee's home country, if the detainee so requests, and the detainee must be informed of this right. Assuming without deciding that Article 36 of the Vienna Convention creates an enforceable right and that a violation of a recognizable right occurred, the court is unable to conclude that any violation prejudiced Petitioner.

In his Brief, Petitioner alleges that he had extreme difficulty understanding the legal process and communicating with law enforcement officers and his attorneys. Regarding his confusion with the legal process, Petitioner does not describe what parts of the legal process he did not understand or how a better understanding would have benefitted him. More importantly, he fails to articulate how contact with a consular officer would have alleviated his confusion or how consular officers would have altered the decisions he made during trial, direct appeal and post-conviction proceedings. *See United States v. Rivas-Cristales*, 221 F.3d 1345 (Table), 2000 WL 640942, at *1 (8th Cir. 2000) (concluding that defendant failed to establish prejudice because he did not allege that contact with consular officials would have changed his conduct while in custody). Additionally, Petitioner does not claim that consular officers would have assisted him if he had availed himself of his rights under Article 36 of the Vienna Convention, and nothing in the record suggests that consular officers would have performed or acted differently than counsel. *See United States v. Esparza-Ponce*, 193 F.3d 1133, 1139 (9th Cir. 1999) (finding no prejudice because defendant did not establish that contact with consular officers would have resulted in assistance to him).[16]

Aside from making general statements regarding his inability to understand the legal process, Petitioner fails to point to specific instances where he could not adequately communicate with law enforcement officers and counsel. Further, although Petitioner

---

[16] The court notes that, even though Petitioner now knows of his rights under Article 36 of the Vienna Convention, consular officials have not been contacted by Petitioner.

assumes that consular officers would have procured an interpreter who could provide a proper interpretation, the interpreter during trial did not contribute to any of the problems experienced by Petitioner.

The record establishes that the trial interpreter, Ms. Lillian Lopez-Reinschmidt, is bilingual, an attorney and very qualified. Petitioner's trial counsel aver that: (1) they trust Ms. Lopez-Reinschmidt's interpretations in light of the work she has done for them in the past; (2) they believe that Ms. Lopez-Reinschmidt provided a word-for-word interpretation, that is, she did not summarize any testimony during Petitioner's trial; and (3) the interpretation she provided corroborated the statements that Petitioner made prior to trial. Petitioner's assertion that he complained to his trial counsel about the interpreter and had difficulty understanding the proceedings is belied by the record.

Trial counsel maintain that Petitioner never indicated to them that he had any problems with his interpreter, and nothing in the record indicates that Petitioner had concerns with Ms. Lopez-Reinschmidt's interpretations. The fact that Ms. Lopez-Reinschmidt referred to a dictionary during Petitioner's testimony clearly shows her dedication to providing an accurate interpretation, not her inadequacy. Although Ms. Lopez-Reinschmidt initially had some difficulty interpreting some of Petitioner's slang, the record does not support the conclusion that she made mistakes that prejudiced Petitioner.

Finally, the medical testimony, which described the severity and possible cause of Karen's injuries, strongly favor the State's theory of the case. It is highly unlikely that any violation of Article 36 of the Vienna Convention had an effect on Petitioner's trial; the evidence not impacted by Article 36 of the Vienna Convention assured beyond a reasonable doubt that the jury would have returned convictions. Thus, no violation of the right to due

process or right to counsel occurred.[17]  Petitioner's claims under Article 36 of the Vienna Convention do not warrant relief.

## C. Due Process Violation—Prejudicial Demonstrative Evidence

Petitioner argues that the Iowa District Court abused its discretion and violated his right to due process when it admitted improper demonstrative evidence.  During direct examination, Petitioner testified that he pushed the victim, while she was in her crib, to stop her from making noise.  On cross-examination, the State requested that Petitioner use a rag doll and demonstrate how he pushed Karen.  Petitioner's trial counsel objected, but the court overruled the objection.  Petitioner argues that the admission of such demonstrative evidence unfairly prejudiced him because it aroused a sense of horror in the jury and caused the jury to base its decisions on something other than the established propositions in the case.  In response, Respondent argues that Petitioner's demonstrative evidence claim is unexhausted and procedurally barred.  Respondent asserts that Petitioner waived his demonstrative evidence claim and did not fairly present it to the Iowa courts.  Alternatively, Respondent contends that admission of the rag doll demonstrative evidence did not violate Petitioner's due process rights because the State merely responded to Petitioner's testimony during direct examination and such evidence addressed a central issue in the case, that is, the amount of force Petitioner used when he pushed Karen.

### 1.    Exhaustion/Procedural Default

Respondent correctly points out that Petitioner did not exhaust his demonstrative evidence claim.  As the application for post-conviction relief acknowledges, Petitioner did not present his demonstrative evidence claim on direct appeal, and, although he asserted it in his application for post-conviction relief, Petitioner only contested the State's motion

---

[17] The court notes that Article 36 of the Vienna Convention places the duty to inform foreign nationals of their rights on "competent authorities of the . . . State."  *See* Vienna Convention on Consular Relations, art. 36(b)(1), Apr. 24, 1963, 21 U.S.T. 77, 100-101, T.I.A.S. No. 6820.  The language of Article 36 of the Vienna Convention does not require an attorney to inform foreign nationals of their right to consular assistance.

for summary judgment with regard to the claim that trial counsel failed to adequately investigate and the claim that newly discovered evidence or evidence not presented at trial warranted a new trial. Given the decision to abandon the other claims that he raised in his application for post-conviction relief, it is clear that the Iowa District Court never had a full and fair opportunity to rule on the demonstrative evidence claim. Similarly, the Iowa Supreme Court never had such opportunity because Petitioner never reasserted his demonstrative evidence claim in his pro se response or his motion for reconsideration. Although he generally asserted in his motion for reconsideration that counsel failed to object to prejudicial and inconclusive evidence, Petitioner never specifically took issue with the use of the demonstrative evidence during trial. Petitioner's general assertions do not satisfy the exhaustion requirement.

Moreover, in his Application, Petitioner asserted that trial counsel provided ineffective assistance because they failed to object to the admission of prejudicial demonstrative evidence, that is, the same claim that he raised and abandoned during post-conviction proceedings.[18] He did not contend that the Iowa District Court abused its discretion and violated his right to due process when it admitted improper demonstrative evidence. Rather, Petitioner raised such contention for the first time in his Brief.[19] It is true that Petitioner's ineffective assistance of counsel claim refers to a constitutional case, but such claim does not alert the state courts to the fact that Petitioner is also relying on federal due process principles. Petitioner's ineffective assistance of counsel claim and due process claim clearly do not rely on the same factual and legal grounds. Further, Petitioner is unable to rely on the broad assertion in his application for post-conviction relief that his convictions violate provisions of the Constitution. Such assertion does not

---

[18] The trial transcript clearly shows that Petitioner's trial counsel objected to the admission of the demonstrative evidence.

[19] Once again, 28 U.S.C. § 2244(d) appears to bar Petitioner's demonstrative evidence claim.

provide an adequate opportunity to review federal constitutional issues and to correct federal errors made by the Iowa District Court. Because he relied on constitutional due process principles for the first time in his Brief, Petitioner never presented the Iowa Supreme Court with the same legal theory that he now wants this court to address.

Having concluded that Petitioner did not exhaust his remedies in the Iowa courts, the court also concludes that the demonstrative evidence claim is procedurally defaulted because Petitioner does not assert that he is able to pursue it in state court and it appears that Iowa law prevents him from asserting it. *See* Iowa Code § 822.8. Further, Petitioner is unable to overcome his procedural default because direct appeal counsel believed the demonstrative evidence claim to be meritless and did not assert it. Petitioner fails to show good cause for his failure to present the demonstrative evidence claim in state court and actual prejudice as a result of the alleged constitutional violation. *See Coleman*, 501 U.S. at 750. Apart from that failure, Petitioner did not show that the failure to review it would result in a fundamental miscarriage of justice. *Id*. Accordingly, the court need not reach the merits of the demonstrative evidence claim.

### 2.    *Merits*

"The admissibility of evidence is a matter of state law, and [federal courts] review admissibility rulings in a federal habeas corpus action 'only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" *Kuntzelman v. Black*, 774 F.2d 291, 292 (8th Cir. 1985) (quoting *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir. 1984)); *see also Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (stating that matters of state evidentiary law are unreviewable); *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) (same). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*,

94 F.3d 458, 460 (8th Cir. 1996) (citations omitted); *see also Rousan v. Roper*, 436 F.3d 951, 958-59 (8th Cir. 2006) (reiterating standard).

A review of the demonstrative evidence claim leads the court to conclude that no violation of Petitioner's due process rights occurred when the Iowa District Court overruled trial counsel's evidentiary objection. Such conclusion is supported by several findings. First, the court agrees with Respondent's assertion that the State requested a demonstration in light of Petitioner's testimony during direct examination and the demonstrative evidence addressed a contested issue, namely the amount of force that Petitioner exerted when he pushed Karen. Second, the actual demonstration only lasted a matter of seconds and Petitioner's trial counsel took steps to make sure that the demonstration did not prejudice Petitioner.[20] Finally, Petitioner's reliance on *United States v. Gaskell*, 985 F.2d 1056 (11th Cir. 1993), is unavailing. *Gaskell* is distinguishable from the present case because: (1) the Eleventh Circuit Court of Appeals decided *Gaskell* under standards applicable to direct appeal, not under the more deferential 28 U.S.C. § 2254(d) standards; (2) the demonstration in *Gaskell* was conducted by a physician, not the defendant; and (3) the government failed to establish that either the degree of force or the number of oscillations used in the demonstration bore any relationship to the defendant's actions. *See id.* at 1060-62. Therefore, the demonstrative evidence admitted by the Iowa District Court is not "conspicuously prejudicial or of such magnitude as to fatally infect the trial." *Parker*, 94 F.3d at 460.

### D. Ineffective Assistance of Trial Counsel—Inadequate Investigation

Petitioner contends that trial counsel provided ineffective assistance because they failed to adequately investigate the case. In particular, Petitioner argues that trial counsel

---

[20] After objecting to the admission of the demonstrative evidence, Petitioner's trial counsel objected to the position of the rag doll and received permission from the Iowa District Court to hold the rag doll during the demonstration so as to more accurately replicate the actual position of the victim at the time of the incident.

chose not to depose witnesses who were willing to testify that the victim had sustained injuries while in her mother's care and that these injuries were the real cause of Karen's death. In support of his claim, Petitioner references the affidavits of people who claim to have knowledge of Karen's prior injuries. In response, Respondent argues that trial counsel's strategy of choosing not to accuse the victim's mother is well within the wide range of reasonable professional assistance and that no prejudice resulted from trial counsel's actions.

### 1. Exhaustion/Procedural Default

Petitioner asserted the inadequate investigation claim in his application for post-conviction relief, and, after the Iowa Supreme Court granted summary judgment in favor of Respondent, the Iowa Supreme Court dismissed as frivolous Petitioner's appeal. By proceeding to address Petitioner's inadequate investigation claim under 28 U.S.C. § 2254(d)(1), Respondent essentially concedes that the Iowa Supreme Court had a full and fair opportunity to address such claim on the merits. Accordingly, the court concludes that the inadequate investigation claim is exhausted.

### 2. Merits

Petitioner has neither overcome the strong presumption that the conduct of counsel fell within a wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 689, nor shown that any deficiencies in counsel's performance prejudiced his defense, *id*. at 692-94. With respect to trial counsel's actions, they fall well within the realm of reasonableness. Under *Strickland*, the court's review must be "highly deferential" without "the distorting effects of hindsight." *Id*. at 689. "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. (1985)). The record indicates that trial counsel investigated and considered the possibility that the victim sustained the fatal injuries while in her mother's care. It also indicates that trial counsel decided not to

pursue this line of defense for several well-defined reasons. First, trial counsel relied on their medical expert's conclusion that Karen's severe injuries could not have been sustained more than 48 hours prior to her death, and the evidence did not support the theory that someone other than Petitioner caused Karen's injuries within the 48 hours that lapsed prior to her death.[21] Second, trial counsel did not think it prudent to place Miguel Camberos Arteaga on the stand because the prosecution could have easily depicted him as a biased witness.[22] Finally, trial counsel decided to avoid accusing the victim's mother of the crime because they believed that it would arouse the indignation of the jury. Instead, they believed that an accident theory would better account for Petitioner's admission that he pushed Karen while she was in his care. Given those reasons, the court concludes that the Iowa courts did not unreasonably apply federal law when they determined that trial counsel properly investigated the case and made informed and reasoned decisions regarding trial strategy. *See Strickland*, 466 U.S. at 689.

Additionally, trial counsel's actions did not prejudice Petitioner. The medical evidence indicated that Karen's extreme injuries could not have occurred by accident, and nothing supports the conclusion that someone other than Petitioner could have inflicted such injuries. Therefore, it is not probable that, but for trial counsel's failure to present

---

[21] Miguel Camberos Arteaga's affidavit states that, on January 25, 1997 (three days prior to the victim's death), Mirta said: "my poor little girl, the bruise she had on her forehead is going away but the vomiting has not gone away." The affidavits of Bertha Espinoza, Maria Rose Cazares and Alejandra Guevara suggest that the victim might have sustained an injury to her head sometime prior to her death while visiting relatives in South Sioux City, Nebraska. Nonetheless, the affidavits do not assert that Karen suffered an injury within 48 hours of her death and they do not allege actual observance of a bruise or other signs of injury with respect to Karen.

[22] "Karen's mother had overheard [Miguel Camberos Arteaga] telling [Petitioner] to deny everything to the police. [Miguel Camberos Arteaga] had taken property from Karen's mother to sell in order to raise money for another lawyer for [Petitioner] and [Miguel Camberos Arteaga] regularly met with [Petitioner] in jail." *See Ledesma v. State*, No. PCCV121510 (Woodbury County Dist. Ct. 2003).

an additional theory, the result of the proceeding would have been different, that is, the jury would have had a reasonable doubt respecting Petitioner's guilt. *Strickland*, 466 U.S. at 695.

In sum, relief under 28 U.S.C. § 2254(d)(1) is not warranted. Given the record, the Iowa courts did not unreasonably apply clearly established Federal law, that is, *Strickland*, 466 U.S. at 689-95.

### E. Ineffective Assistance of Trial Counsel—Inadequate Interpreter

Petitioner contends that trial counsel provided ineffective assistance when they failed to procure an adequate interpreter. According to Petitioner, the trial interpreter, Ms. Lopez-Reinschmidt, did not provide accurate interpretations, and trial counsel should have lodged an objection because the interpreter tainted his defense. As proof of Ms. Lopez-Reinschmidt's inadequacy, Petitioner points to her difficulty in interpreting Petitioner's slang and her reliance on a dictionary during Petitioner's testimony. He claims that he misunderstood the medical expert's position and disputes that he made a confession. In response, Respondent argues that Petitioner's inadequate interpreter claim is procedurally defaulted because Petitioner abandoned it during post-conviction relief proceedings and post-conviction relief counsel stated that Petitioner's ineffective assistance of counsel claims lacked merit. Alternatively, Respondent maintains that Petitioner is not entitled to relief on the inadequate interpreter claim because: (1) the interpreter's credentials are very good; (2) Petitioner failed to complain to his trial counsel or to the court about the interpreter; and (3) Petitioner suffered no prejudice as a result of any interpretation because the medical evidence established Petitioner's guilt.

### 1. Exhaustion/Procedural Default

Petitioner failed to properly present the inadequate interpreter claim to the Iowa courts and, therefore, deprived them of a meaningful opportunity to address it. Petitioner never raised the inadequate interpreter claim on direct appeal. Petitioner raised the inadequate interpreter claim in his application for post-conviction relief, but he

subsequently waived the inadequate interpreter claim when he responded to the State's motion for summary judgment. Consequently, the Iowa District Court never had a chance to rule on the inadequate interpreter claim. Likewise, the Iowa Supreme Court never addressed the inadequate interpreter claim because Petitioner failed to assert it in his pro se response. Indeed, he only pursued the claim that trial counsel failed to adequately investigate and the claim that newly discovered evidence or evidence not presented at trial warranted a new trial. Although Petitioner asserted in the motion for reconsideration that trial counsel failed to object to the interpreter used at trial, the Iowa Supreme Court denied it and confirmed its prior order, which dismissed as frivolous Petitioner's appeal. Under these circumstances, the court concludes that Petitioner did not provide the Iowa courts with an adequate opportunity to pass on the merits of the inadequate interpreter claim.

Further, the court concludes that the inadequate interpreter claim is procedurally defaulted because Petitioner does not assert that he is able to pursue it in state court and it appears that Iowa law prevents him from asserting it. *See* Iowa Code § 822.8. Concerning the procedural default, Petitioner is unable to show good cause for the failure to adequately present the inadequate interpreter claim to the Iowa courts in light of counsel's statement that it had no merit. *See Coleman*, 501 U.S. at 750. And, Petitioner fails to demonstrate that he suffered actual prejudice as a result of the alleged constitutional violation or that the failure to review it would result in a fundamental miscarriage of justice. *Id*. Accordingly, the inadequate interpreter claim is procedurally barred.

### 2. Merits

Alternatively, regarding the trial interpreter, the court finds that, in accordance with its prior determinations, trial counsel did not provide deficient assistance and that no prejudice resulted from trial counsel's actions. *Strickland*, 466 U.S. at 689-95. Nothing in the record indicates that the qualified interpreter prejudiced Petitioner, especially considering all of the evidence. At this late date, Petitioner is unable to make general objections regarding the interpretation provided by the interpreter. *See Valladares v.*

*United States*, 871 F.2d 1564, 1566 (11th Cir. 1989). Accordingly, Petitioner's inadequate interpreter claim does not justify the grant of habeas relief.

## VI. REQUEST FOR AN EVIDENTIARY HEARING

Petitioner asks the court for an evidentiary hearing to develop the factual basis of his claims. He relies on 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Due to the limits set forth in 28 U.S.C. § 2254(e)(2), it is appropriate to deny Petitioner's request for an evidentiary hearing. *See Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (discussing constraints on district court's discretion to hold an evidentiary hearing); *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (discussing standard for conducting an evidentiary hearing under 28 U.S.C. § 2254(e)(2)); *Kinder v. Bowersox*, 272 F.3d 532, 542 (8th Cir. 2001) (finding it was proper for district court not to hold an evidentiary hearing because the petitioner did not meet the requirements of 28 U.S.C. § 2254(e)(2)); *Parker v. Kemna*, 260 F.3d 852, 854 (8th Cir. 2001) (same); *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) (same); *cf. Johnston v. Luebbers*, 288 F.3d 1048, 1058-60 (8th Cir. 2002) (assuming that 28 U.S.C. §

2254(e)(2) did not bar the district court from granting an evidentiary hearing and denying the petitioner an evidentiary hearing because such a hearing would not assist in the resolution of his claim).

## VII. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying

constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Petitioner failed to make the requisite "substantial showing" with respect to the claims he raised in his Application pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253.

If Petitioner desires further review of his 28 U.S.C. § 2254 Application, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## VIII. CONCLUSION

In sum, the court finds that Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254. The Petitioner's claims are procedurally barred, and/or the Iowa courts' adjudication of Petitioner's claims neither resulted in a decision contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, Petitioner's Application (docket no. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent. In addition, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 15th day of January, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA